(C.D. 2086)

F. A. Salamy & Co. v. United States

United States Customs Court, Third Division

(Decided May 20, 1959)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: In this case, the plaintiff is protesting the rate of exchange used by the collector for currency conversion purposes in liquidating an entry of merchandise consisting of linen and cotton embroidery imported from China. It is claimed in the protest that the wrong date was used as the date of exportation to determine the conversion value of the currency.

31 U.S.C.A., section 372 (§ 522, Tariff Act of 1930) and the pertinent provisions of the Customs Regulations of 1943 with reference to determining the date of exportation for the purpose of converting foreign currency into United States currency are as follows:

31 U.S.C.A., section 372 (§ 522, Tariff Act of 1930):

§ 372. Conversion of currency—Value of foreign coin proclaimed by Secretary of Treasury

(a) The value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year.

Proclaimed value basis of conversion

(b) For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after June 17, 1930, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subsection (c) of this section, shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of subsection (a) of this section, for the quarter in which the merchandise was exported.

Market rate when no proclamation

(c) If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. . . .

## Customs Regulations of 1943:

16.4 Conversion of currency.—(a) . . .

(b) The date of exportation for currency conversion shall be fixed in accordance with section 14.3 of these regulations.

14.3 Appraisement of merchandise; determination of value.—(a) . . .

(b) The time of exportation referred to in section 402 of the tariff act is the date on which the merchandise actually leaves the country of exportation for the United States.[5] . . .

It was the duty of the collector to convert the foreign currency of the invoices into United States currency in conformity with the statutory and regulatory provisions set out above. A compliance therewith would require him to make the conversion by using the rate of exchange in effect on the date of exportation. Since it is claimed that the collector used the wrong date as the date of exportation in converting the currency of the invoices, the question before this court is to determine the date on which the merchandise herein was exported from China, the country of exportation.

The pertinent facts are set forth in the following stipulation upon which the parties have submitted the case for decision:

It is hereby stipulated and agreed by and between counsel for the Plaintiff and the Assistant Attorney General for the United States, Defendant, that:—

(1) The merchandise covered by the above-named protest consists of 8 cases of linen and cotton embroidery which was invoiced in Chinese dollars at Swatow, China, on August 8, 1946, destined for the United States. The Collector of Customs used the conversion rate of $0.000502 which was the rate on August 8, 1946, for converting Chinese dollars into U.S. dollars.

(2) Said merchandise destined for the U.S.A. was shipped from Swatow on the "Hai Yang" which sailed on August 18, 1946, for Hong Kong. The "Hai Yang" crossed the Chinese border and arrived in Hong Kong, British territory, on August 19, 1946.

The above-named protest is submitted for decision upon this stipulation.

---

[5] If the merchandise is shipped directly by water from the country of export, the date of the sailing of the vessel is the date of exportation. Since the act of exportation is not complete until the merchandise finally leaves the jurisdiction of the exporting country, if a vessel with merchandise on board sails from two or more ports, or more than once from the same port, of the exporting country, whether or not stopping on the intervening voyage at a port of another jurisdiction, or if the merchandise is transshipped in another jurisdiction and subsequently reenters the jurisdiction of the exporting country on another vessel, or if the merchandise is transshipped to another vessel in the same jurisdiction, the date the vessel on which the merchandise finally leaves the exporting country sails from the last port thereof is the date of exportation. When the merchandise is shipped from an interior country through the ports of another country or from a country contiguous to the United States, the date of exportation is the date on which the merchandise crosses the border of the country of exportation and passes beyond the control of the government of such country. These provisions apply also to merchandise shipped directly by air.

The question of the date of exportation has been before the courts on many occasions, and, from the decisions rendered, the general rule has evolved that the date of exportation is the date the importing vessel last sails from the country of exportation. One of the leading cases on the question is *Forman* v. *Peaslee*, 9 Fed. Cas. 452, decided in 1857. In that case, merchandise was shipped from Wales, in Great Britain, to Liverpool, and then transshipped to the United States. The court held that the date of exportation was the date on which the vessel finally cleared from Liverpool. This holding was based on the theory that until the vessel with the goods on board was finally cleared from the country, the act of exportation was not complete, for until that time the goods were under the control of and subject to search and seizure by the exporting country. The court did not consider a transportation coastwise from one port of a country to another an exportation.

The aforementioned rule and the reason upon which it was based has been cited with approval and has been applied by this court under varying sets of facts. In the case of *B. H. Dyas Corp.* v. *United States*, 56 Treas. Dec. 268, T.D. 43600, the merchandise was laden at Havre, France, on the importing vessel, which sailed first to Antwerp, Belgium, then to Bordeaux, France, from whence it proceeded to the United States. The date on which the importing vessel sailed from Bordeaux was held to be the date of exportation. In the case of *W. J. Byrnes & Co. of N.Y., Inc.* v. *United States*, 58 Treas. Dec. 893, Abstract 12666, goods were shipped from Havre, France, on a channel steamer to Southampton, England, and transshipped there on a vessel which sailed to Cherbourg, France, before proceeding to the United States. An application of the general rule led to the holding that the date of exportation was the date the importing vessel sailed from Cherbourg. See also *Lian Bros.* v. *United States*, 15 Cust. Ct. 58, C.D. 941, and *F. F. G. Harper Co.* v. *United States*, 58 Treas. Dec. 980, Abstract 13158. In the latter case, the importing vessel did not leave and return to the jurisdiction of the exporting country, but, after taking on the merchandise, stopped at several ports of the exporting country before sailing for the United States, and the date of exportation was held to be the date of sailing from the last port. In applying the general rule under the facts of the cited cases, it is apparent that the courts considered the date of the last sailing of the importing vessel from the country of exportation to be the date on which the importing vessel sailed from the last port thereof.

However, in none of the cases cited were the facts the same as those in the instant case, for although the "Hai Yang," the vessel with the

imported merchandise destined for the United States on board, sailed from the river port of Swatow, China, on August 18, 1946, and apparently did not put in at any other Chinese port, it admittedly did not leave Chinese territory until August 19, 1946, when it crossed the Chinese border into Hong Kong. For that reason, the general rule as applied in the above cases would not be applicable in the instant case, since the merchandise on the "Hai Yang" did not finally leave the exporting country on the date of the sailing of the vessel from the last port thereof, and, until the merchandise finally left the exporting country, the act of exportation was not complete, since the merchandise was still within the jurisdiction and control of the exporting country and subject to search and seizure by the Government thereof. We have been unable to find another case in which it was shown that the vessel with the merchandise on board remained within the territorial jurisdiction of the exporting country beyond the date that it sailed from the last port of that country.

The most recent case where the question of the date of exportation for currency conversion purposes was before the Court of Customs and Patent Appeals appears to be the case of *Avakian Bros., Inc.* v. *United States*, 41 C.C.P.A. (Customs) 80, C.A.D. 532. The merchandise involved, Iranian rugs, was shipped overland from Iran to Iraq, entering the latter country on March 23, 1949. The rugs were placed in a warehouse for several months and were laden on the S.S. *Steel Artisan* at Basrah, Iraq, sailing from that port on June 5, 1949. Enroute to New York, the importing vessel called at the port of Khorramshahr, Iran, and sailed therefrom on June 8, 1949. The appellate tribunal enunciated the rule that "the date of exportation is the date on which the merchandise finally leaves the exporting country *and passes beyond its control*" [emphasis supplied] and held that June 8, 1949, was the date of exportation. See also *D. N. & E. Walter & Co.* v. *United States*, 42 C.C.P.A. (Customs) 114, C.A.D. 582. Though the facts in the *Avakian* case are somewhat dissimilar to those in the present case, the rule and the reason upon which it is based are applicable here.

Applying that rule to the facts in the instant case, we hold that August 19, 1946, the date on which the vessel carrying the merchandise herein crossed the Chinese border, and thus finally left the territorial jurisdiction of China, the exporting country, and passed beyond its control, is the date of exportation, and the collector of customs should have used the rate applicable on that date for the purpose of converting the foreign currency of the invoices covered by the protest into United States currency.

Judgment will be rendered accordingly.